UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS H.S.[1], <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF THE GOLDEN STATE ANNEX, et al., <br><br> Respondents. | No. 1:25-cv-01924-TLN-CKD <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Juan Carlos H.S.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 3.) Respondents Warden of the Golden State Annex, Todd M. Lyons, Kristi Noem, and Pam Bondi (collectively "Respondents") filed an opposition. (ECF No. 13.) Respondents waived a hearing and had no objection to converting the request for TRO into a request for preliminary injunction. (*Id*.) Petitioner replied. (ECF No. 14.) For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a father, a husband, a taxpayer, and a member of the East Bay Area community. (ECF No. 3 at 5.) He is gainfully employed and he is also not a U.S. citizen. (*Id.*) Petitioner asserts he has "no criminal history anywhere in the world." (*Id.* at 5.)

Petitioner entered the United States without inspection in October 2023. (*Id.* at 3.) He was initially detained by immigration authorities, but he was later released on his own recognizance after authorities determined Petitioner was not a flight risk or danger to society. (*Id.*) Thereafter, Petitioner applied for asylum and his immigration proceedings are pending. (*Id.*) As he awaits a determination in his case, he has found gainful employment and complied with all conditions of his release. (*Id.*) Petitioner provides for his family: a wife and four children, including a five-month-old baby. (*Id.*)

On November 13, 2025, ICE detained Petitioner at a routine check-in at the Immigration and Customs Enforcement ("ICE") Center in San Francisco. (*Id.* at 3.) Petitioner was not afforded a hearing prior to his detention, nor has he been provided a bond hearing since his arrest. (*See generally id.*)

## II. STANDARD OF LAW

A preliminary injunction is an extraordinary remedy. Courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of

hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

### III. ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A. Likelihood of Success on the Merits

Petitioner claims that his arrest and detention without a pre-deprivation hearing violates substantive and procedural due process under the Fifth Amendment.[2] (ECF No. 3.) Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and not entitled to a bond hearing, despite a prior exercise of discretion under § 1226(a). (ECF No. 13 at 2–3.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings, including detention. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

##### i. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."

---

[2] Finding the requested relief is warranted on the basis of procedural due process alone, the Court need not address cumulative claims, and only addresses likelihood of success on the procedural due process claim.

3

1 *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

"Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release." *Id*. (quoting *Morrissey*, 408 U.S. at 482) (cleaned up). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros*, 2025 WL 2637503, at *6. To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Petitioner has a substantial liberty interest in his continued release from ICE detention. He has established a life in California and developed "enduring attachments of normal life" as described in *Morrissey*, 409 U.S. at 482. Petitioner is providing for and raising a family, he is gainfully employed, he is a member of the East Bay Area community where he also has extended family. (ECF No. 3 at 5, 8.) Additionally, Petitioner has substantially complied with the conditions of his release, appearing at all ICE appointments and complying with federal, state, and local laws. As in *Morrissey*, where the government's release created an "implicit promise" that the government would not revoke a person's liberty if he complied with the conditions of his release, here too, Petitioner was entitled to rely on that promise as he awaits a determination on his asylum application. (*Id.*)

### ii. Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;"

1  (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the
2  probable value, if any, of additional or substitute procedural safeguards;" and (3) "the
3  Government's interest, including the function involved and the fiscal and administrative burdens
4  that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424
5  U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the
6  government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at
7  1206.

8  As to the first *Mathews* factor – Petitioner's private interest – as discussed above,
9  Petitioner has a profound interest in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d
10 1083, 1094 (E.D. Cal. 2025).

11 As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the
12 risk here be considerable.  The risk of an erroneous deprivation of Petitioner's liberty interest is
13 high where he has received virtually no procedural safeguards such as a bond or custody
14 redetermination hearing. *See A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL
15 1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so where, as here, Petitioner was
16 previously released pursuant to a finding that he was neither dangerous nor a flight risk. *See
17 R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil immigration detention, which is 'nonpunitive in
18 purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the
19 community.")  He has also maintained contact with ICE and has no criminal history.

20 As to the third *Mathews* factor, the government's interest in detaining Petitioner without a
21 hearing before a neutral decisionmaker is low. *R.D.T.M.*, 2025 WL 2686866 at *6.  Custody
22 hearings in immigration court are "routine and impose a 'minimal' cost." *Id.* (citing *Doe*, 787 F.
23 Supp. 3d at 1094; *Pinchi*, 2025 WL 1853763, at *2).  Moreover, Respondents have not provided
24 any legitimate interest for detaining Petitioner. *See Hernandez*, 872 F.3d at 981 (finding
25 "[immigration] detention incidental to removal must bear a reasonable relation to its purpose.").
26 "The government has no legitimate interest in detaining individuals who have been determined
27 not to be a danger to the community and whose appearance at future immigration proceedings can
28 be reasonably ensured by [ ] bond or alternative conditions." *Id.* at 994.  The government has not

1  issued a final order of removal for Petitioner. Petitioner was initially determined not to be a flight
2  risk and has since stayed in communication with ICE and updated his address. Nor is Petitioner a
3  danger to the community. He has no criminal history, which Respondents do not refute.

4        For these reasons, the Court finds Respondents' interest in detaining Petitioner without a
5  hearing is negligible and does not outweigh his substantial liberty interest or the risk of erroneous
6  deprivation of liberty. At minimum, due process thus requires that Petitioner receive a hearing
7  before a neutral decisionmaker. Respondents have denied him that constitutionally required
8  procedure.

9        Finally, courts consistently find that asylum seekers detained under § 1225(b)(1)(B)(ii) are
10 entitled to bond hearings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)
11 (citing *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018)).

12       Having found Petitioner has a protected liberty interest and determined that due process
13 requires Petitioner receive a hearing before a neutral decisionmaker — which has been denied to
14 Petitioner — the Court finds that Petitioner has established a likelihood of success on the merits.

15         B.    <u>Irreparable Harm</u>

16       The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed
17 on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE
18 detention facilities [and] the economic burdens imposed on detainees and their families as a result
19 of detention." *Hernandez,* 872 F.3d at 999. Moreover, "[i]t is well established that the
20 deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id.* at 994
21 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged
22 deprivation of a constitutional right is involved, most courts hold that no further showing of
23 irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005);
24 *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty
25 by detention constitutes irreparable harm."). In addition to harms imposed by continued
26 immigration detention, Petitioner has shown he is likely to succeed on the merits of his
27 constitutional claims. Thus, the Court finds Petitioner has suffered significant irreparable harm.
28 ///

       C. <u>Balance of Equities and Public Interest</u>

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Moreover, the public has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez*, 872 F.3d at 996; *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.")

As discussed above, Petitioner is likely to succeed in proving Respondents have violated federal laws and deprived him of his constitutional rights and liberty. Additionally, Respondents are not harmed by their sworn duty to follow the law. *See Zepeda*, 753 F.2d at 727. Thus, the balance of equities and public interest factors weigh in Petitioner's favor.

Having found that Petitioner is likely to succeed on the merits of both his statutory and constitutional claims, this Court finds that immediate release is warranted to return to the status quo ante and remedy a constitutional violation. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

  **IV.** **CONCLUSION**

Therefore, the Court GRANTS Petitioner's motion and issues the preliminary injunction set forth below. IT IS HEREBY ORDERED that:

  1. Petitioner's motion for temporary restraining order (ECF No. 3), converted to a motion for preliminary injunctive relief, is GRANTED.

  2. Respondents must IMMEDIATELY RELEASE Petitioner from custody under the

1  same conditions as he was released prior to his current detention.  Respondents shall not impose
2  any additional restrictions on him, unless such restrictions are determined to be necessary at a
3  future pre-deprivation/custody hearing.  Respondents must file a notice certifying compliance
4  with this provision of the Court's Order by **December 24, 2025**.

5       3.      Respondents are ENJOINED AND RESTRAINED from re-arresting or re-
6  detaining Petitioner absent compliance with constitutional protections, including a minimum of
7  seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) there
8  are material changed circumstances which demonstrate that there is a significant likelihood of
9  Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by
10 clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At
11 any such hearing, Petitioner shall be allowed to have his counsel present.

12      4.      The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See*
13 *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).  Courts regularly waive security in cases
14 like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal.
15 Oct. 10, 2025).

16      5.      The Clerk of Court is directed to update the docket to only list Petitioner's first
17 name and last initials.

18      6.      This matter is referred back to the United States Magistrate Judge for further
19 proceedings.

20      IT IS SO ORDERED.

22  Date: December 23, 2025                           _____
                                                     Troy L. Nunley
23                                                     Chief United States District Judge