UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS H.S., | No. 1:25-cv-1924 CKD P |
| Petitioner, | |
| v. | ORDER GRANTING PETITION |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILTY, et al., | FOR WRIT OF HABEAS CORPUS |
| Respondent. | |

Petitioner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). ECF No. 17. For the reasons which follow, the petition is granted.

I. Petitioner's Allegations

In his habeas petition, petitioner alleges as follows:

1. Petitioner is a native of Peru.

2. He entered the United States at a lawful point of entry on October 1, 2023, seeking asylum. Petitioner was briefly detained. When Immigration and Customs Enforcement Agency (ICE) officers determined petitioner was neither dangerous nor a flight risk he was released into the United States.

/////

1

3. Petitioner was given an order to appear for removal proceedings.

4. On February 24, 2024, petitioner filed an asylum application. On December 30, 2024, petitioner was authorized to work.

5. On November 13, 2025, petitioner appeared at a regularly scheduled ICE appointment in San Francisco. Petitioner was detained and ultimately transferred to an ICE detention facility. The reason given for his detention was that there was an issue with a picture upload on his Intensive Supervision Appearance Program app. Petitioner had no prior knowledge of that problem and believes he complied with all conditions of release.

6. Petitioner had not committed any crimes before being re-detained.

7. When not in custody, petitioner resides with his wife and four children in Livermore.

Respondent does not contest any of petitioner's allegations.

## II. Grant of Preliminary Injunction

The district court judge previously assigned to this case ordered preliminary injunctive relief. The court ordered petitioner's release under the same conditions as he was released previously and that additional restrictions not be imposed unless they were determined to be necessary at a pre-deprivation /custody hearing.

The court also enjoined and restrained respondents

> from re-arresting or redetaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

ECF No. 15 at 7-8.

On December 24, 2025, counsel for respondents provided the court with notice that petitioner had been released. Petitioner remains out of custody pursuant to the preliminary injunction.

/////

/////

III. Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

IV. Violation of Fifth Amendment

    A. Liberty Interest

Petitioner contends that being arrested and detained without a determination that he is flight risk or danger to the community at a hearing violates his Fifth Amendment right to not have his liberty taken away without due process.[1] Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States. Id. at 693. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to aliens who have "passed through our gates." Shaughnessy v. U.S., 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

/////

---

[1] Because the court finds petitioner is entitled to the relief he seeks for a violation of the Fifth Amendment, the court need not address his other claims.

3

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey[ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that petitioner's initial release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk or dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion to detain or release a noncitizen

4

pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention were mandated by statute because although petitioner was physically admitted into the United States, he remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection. In DHS v. Thuraissigiam, 591 U.S. 103 (2020) the Supreme Court found that an alien arrested near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), he has also "passed through our gates," Shaughnessy, 345 U.S. at 212, is a person within the border of the United States entitled to Due Process under Zadvydas and is not subject to an order of removal. These facts distinguish him from Supreme Court precedent as to persons detained at or near their time and place of entry and / or ordered removed. The undersigned rejects the premise that petitioner, who was released into the county, has children, works, has no criminal history, has not been ordered removed, and has ties to his community, does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit. See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries."). Denying petitioner due process protection because he is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States." Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted). "Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

B. Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For approximately two years, petitioner was free from custody with his wife and children before his detention. The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 10125, 1033 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody

6

redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner presents neither.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id.

The court finds that the Mathews factors weigh in favor of finding that petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

2. The relief afforded petitioner via preliminary injunction is ordered permanent.

   A. Any additional restrictions on petitioner's release from custody cannot be

imposed unless determined necessary at a pre-deprivation / custody hearing.

   B. Petitioner cannot be re-arrested or re-detained by respondents absent compliance with constitutional protections, including a minimum of seven-days' notice and a hearing before a neutral fact-finder where respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

   3.  This case is closed.

Dated:  February 16, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
h.s.1924.mer